**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FADILJ DECEVIC; and, NEDZAD
ORAHOVAC, *on behalf of himself and others*
*similarly situated*,

         *Plaintiff, and Lead Plaintiff*
         *for the Proposed Class,*

- against -

ALMA REALTY CORP.; GARDEN SPIRES
ASSOCIATES, LLC; 232-262 TAAFFE PL,
LLC; 467-75 ST. MARKS AVE ASSOC. LLC;
NICHOLAS CONWAY; and, EFSTATHOS
VALIOTIS,

         *Defendants*.

<u>**FLSA COLLECTIVE ACTION and**</u>
<u>**RULE 23 CLASS ACTION**</u>
<u>**COMPLAINT**</u>

<u>**Jury Trial Demanded**</u>

Plaintiffs, FADILJ DECEVIC ("Fadilj") and NEDZAD ORAHOVAC ("Nedzad"), (collectively, "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by and through their undersigned attorney, Mohammed Gangat, Esq., as and for their Complaint against defendants, ALMA REALTY CORP.; GARDEN SPIRES ASSOCIATES, LLC; 232-262 TAAFFE PL, LLC; 467-75 ST. MARKS AVE ASSOC. LLC; NICHOLAS CONWAY; AND, EFSTATHOS VALIOTIS, (collectively, "Defendants"), allege upon personal knowledge as to themselves, and, upon information and belief, as to other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This action is brought to recover unpaid minimum wages, and overtime wages, owed to Plaintiffs and other similarly situated employees of Defendants, in addition to damages for Defendants' failure to provide required wage notices and statements, as well as injunctive and declaratory relief against Defendants' unlawful actions, and attorney fees and costs.

2.      Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201, *et seq*. and specifically the collective action provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages.

3.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") §§ 190, 195, and Part 141 of Title 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") .

4.      The relevant statutory period for Plaintiffs' federal claims under the FLSA is the three-year period preceding the date of the filing of the complaint, and the statutory period applicable to Plaintiffs' state law claims under the NYLL is the six-year period preceding the date of the filing of the complaint.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

7.      Plaintiff, FADILJ DECEVIC, is an adult individual who, at all times relevant to this Complaint, has been a resident of the State and City of New York.

8.      Plaintiff, NEDZAD ORAHOVAC, is an adult individual who, at all times relevant to

this Complaint, has been a resident of the State and City of New York.

9.      A written consent form of Plaintiffs' consent to bring this action as a collective action under the FLSA has already been filed in this action.

10.     At all relevant times, Plaintiffs are covered individuals within the meaning of the FLSA, U.S.C. §§ 206(a) and (207(a), and NYLL §§ 190(2) and 651(5).

11.     At all relevant times, Defendants were employers of Plaintiffs within the meaning of the FLSA, U.S.C. § 203(d), NYLL § 190(3).

12.     Upon information and belief, at all times relevant to the allegations in this Complaint, defendant, ALMA REALTY CORP., ("Alma Realty"), is a domestic business corporation, organized and existing under the laws of the State of New York, with a service of process address of 31-10 37TH AVENUE, SUITE 501, LONG ISLAND CITY, NY 11101.

13.     Upon information and belief, at all times relevant to the allegations in this Complaint, Alma Realty operated and continues to operate real estate management business and provide full-service property management for properties in the tri-state area ranging from residential, commercial, retail, and warehouse. Upon information and belief, Alma Realty operates over 13 branch offices and employs over 200 employees in New Jersey and New York.

14.     Upon information and belief, at all times relevant to the allegations in this Complaint, defendant, GARDEN SPIRES ASSOCIATES, LLC, is a domestic limited liability company, organized and existing under the laws of the State of New York, with a service of process address of C/O ALMA REALTY CORP., 31-10 37TH AVENUE, SUITE 500, LONG ISLAND CITY, NY 11101.

15.     Upon information and belief, at all times relevant to the allegations in this

Complaint, defendant, 232-262 TAAFFE PL, LLC, is a domestic limited liability company, organized and existing under the laws of the State of New York, with a service of process address of 31-10 37TH AVENUE, SUITE 500, LONG ISLAND CITY, NY 11101.

16.     Upon information and belief, at all times relevant to the allegations in this Complaint, defendant, 467-75 ST. MARKS AVE ASSOC. LLC, is a domestic limited liability company, organized and existing under the laws of the State of New York, with a service of process address of 31-10 37TH AVENUE, SUITE 500, LONG ISLAND CITY, NY 11101.

17.     Defendants, ALMA REALTY CORP.; GARDEN SPIRES ASSOCIATES, LLC; 232-262 TAAFFE PL, LLC; and 467-75 ST. MARKS AVE ASSOC. LLC, (collectively, "Entity Defendants"), are a single enterprise with a high degree of interrelated operations, despite their distinct corporate names.

18.     Upon information and belief, at all times relevant to the allegations in this Complaint, defendant, NICHOLAS CONWAY, ("Mr. Conway" or "Individual Defendant") is the owner, shareholder, director, supervisor, managing agent, and/or proprietor, of Entity Defendants.

19.     Upon information and belief, at all times relevant to the allegations in this Complaint, defendant, EFSTATHOS VALIOTIS, ("Mr. Valiotis" or "Individual Defendant") is the owner, shareholder, director, supervisor, managing agent, and/or proprietor, of Entity Defendants.

20.     Upon information and belief, at all times relevant to the allegations in this Complaint,  232-262 TAAFFE PL, LLC and 467-75 ST. MARKS AVE ASSOC. LLC are two such complexes owned and managed by Alma Realty. GARDEN SPIRES ASSOCIATES, LLC is also owned and managed by Alma Realty.

21.     To maintain each residential complex, Alma Realty employs superintendents, including Plaintiffs.

22.    Plaintiffs were interviewed and hired by Mr. Valiotis, the owner and/or chief executive officer of all entity defendants.

23.    Defendants employed Plaintiff Fadilj Decevic to work as a superintendent for 232-262 TAAFFE PL, LLC, which is a residential complex in Brooklyn, and other two nearby residential complexes in Brooklyn. These complexes are owned and managed by Alma Realty. GARDEN SPIRES ASSOCIATES, LLC was responsible for Plaintiff Fadilj Decevic's payroll practices.

24.    Defendants employed Plaintiff Nedzad Orahovac to work as a superintendent for 467-75 ST. MARKS AVE ASSOC. LLC, which is a residential complex in Brooklyn, owned and managed by Alma Realty.

25.    Based on Plaintiffs' observations, Defendants own and manage numerous other residential complexes in the City of New York, in addition to those at which the named Plaintiffs worked.  This includes observations of a WhatsApp chat which Plaintiffs were involved in where other Superintendents from other buildings were also involved, and from meeting those other Superintenders over the years.

26.    Superintendents at each building are victims of egregious wage theft. Throughout the course of each Superintendent's employment with Alma Realty, Superintendents regularly work seven days a week, in excess of 40 hours per week, including the requirement that they be on call 24 hours a day, seven days a week to deal with any issues that arise in their respective work location, without receiving minimum wages and/or overtime pay as required by law.   They are not properly paid because they are not provided required overtime premium pursuant to federal law, nor are they provided the required per unit minimum weekly compensation per the New York State Minimum Wage Order for the Building Service Industry.

27.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendants jointly employed Plaintiffs and had the power to exercise control over the terms and conditions of their employees' employment, including Plaintiffs' employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

28.     Upon information and belief, at all times relevant to the allegations in this Complaint, Entity Defendants were the "enterprise engaged in commerce" within the meaning of the FLSA in that, at all relevant times, they (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

29.     At all relevant times, Plaintiffs performed a discrete job that is integral to all Defendants' business.

30.     Upon information and belief, Defendants share common labor policies and practices.

31.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages and overtime compensation in direct contravention of the FLSA and NYLL.

32.     At all relevant times, Defendants continuously employed Plaintiffs to work as non-exempt employees.

33.     Defendants knowingly and willfully failed to furnish Plaintiffs with accurate statements with every payment of wages, listing gross wages, deductions and net wages as required by NYLL § 195.

34.     At all relevant times, upon information and belief, and during the course of

Plaintiffs' employment, Defendants failed to maintain accurate and sufficient time and pay records.

35.    Defendants failed to display in a place accessible to employees and in a visually conspicuous manner the notices of employee rights to receive the overtime pay at a rate of one and one-half times their regular rate as required under the NYLL.

## STATEMENT OF FACTS

### *PLAINTIFF FADILJ DECEVIC'S EMPLOYMENT*

36.    In or about 2007, plaintiff Fadilj began working for Defendants as a Superintendent at residential buildings managed by Defendants in Brooklyn, New York.

37.    In March 2020, Plaintiff Fadilj was terminated by defendant, Nicholas Conway, when Fadilj was 61 years old at that time.

38.    Plaintiff Fadilj continuously worked for Defendants for about 15 years prior to his termination.

39.    Plaintiff Fadilj was interviewed and hired by defendant Efstathos Valiotis, and Mr. Valiotis told Fadilj that he would live in an apartment managed by Defendants, located at 262 Taaffe Pl, Apt B12, Brooklyn, NY 11205, and he would work as a Superintendent for several nearby residential buildings managed by Defendants.

40.    Mr. Valiotis also introduced Mr. Conway to plaintiff Fadilj, and said that Mr. Conway would supervise his work.

41.    As a building superintendent, plaintiff Fadilj's job duties included collecting and taking out garbage on a daily basis, making minor apartment repairs including minor plumbing, flooring, roofing and electrical work, maintaining building boilers, checking hallways for cleanliness and maintenance issues, and cleaning inside and outside the buildings.

42.    Throughout his employment, plaintiff Fadilj was a live-in building superintendent for a complex of buildings, and from 2015 on, this consisted of 308 units at the following locations: (1) 262 Taaffe Pl, Brooklyn, NY 11205; (2) 232 Taaffe Pl, Brooklyn, NY 11205; (3) 213 Taaffe Pl, Brooklyn, NY 11205; (4) 241 Taaffe Pl, Brooklyn, NY 11205; (5) 950 Kent Ave, Brooklyn, NY 11205; and (6) 275 Classon Ave, Brooklyn, NY 11205. This complex consists of residential buildings that are geographically close to each other and plaintiff Fadilj worked as the sole Superintendent for the complex.

43.    Throughout his employment, plaintiff Fadilj regularly worked as many as seven days and well over 40 hours each week including the requirement that he be on call 24 hours a day, seven days a week to deal with any issues that arise in their respective buildings, without receiving minimum wages and/or overtime pay as required by law.

44.    Even when plaintiff Fadilj was not actively working, he was nevertheless expected to be available to answer tenant calls and deal with any emergencies that arose 24 hours a day.  If at any point during the day or night and plaintiff Fadilj was not in the building premises when he received tenant calls regarding apartment maintenance, he needed to return to the building premises immediately unless the tenant told him that he could perform building maintenance later. Defendants also posted plaintiff Fadilj's phone number in the building premises so that tenants could call him whenever they needed apartment maintenance.

45.    Throughout his employment, Defendants told plaintiff Fadilj not to track his hours, but plaintiff observed that other employees would clock in and out to track their work hours.

46.    When plaintiff Fadilj was hired, Defendants hired him to work at a fixed weekly wage rate. There is no agreement or clear mutual understanding that whether the fixed weekly rate included overtime pay or not. Additionally, when plaintiff Fadilj was hired, Defendants told him

that his schedule would be from 8:00 a.m. to 4:00 p.m., Monday to Friday. But plaintiff Fadilj in fact worked well over forty hours a week, and was required to be on call 24 hours a day.

47.    From about 2007 to about 2017, plaintiff Fadilj was paid $800.00 per week. Then plaintiff Fadilj received a raise of $100.00 per week. From about 2018 to the end of his employment, plaintiff Fadilj was paid $900.00 per week. Mr. Conway would hand plaintiff Fadilj his paychecks every Friday.    This amount was not sufficient to provide the required overtime premium pursuant to federal law, or the required per unit minimum weekly compensation per the New York State Minimum Wage Order for the Building Service Industry.

48.    A more precise statement of the hours and wages may be made when plaintiff Fadilj obtains the wage and time records Defendant was required to keep under the New York Labor Law. A demand for the same has been made.

49.    Throughout his employment, plaintiff Fadilj was not provided with any wage notices.

50.    Throughout his employment, plaintiff Fadilj was provided with pay stubs. However, the paystubs did not accurately reflect his pay rates or work hours. The paystubs stated that plaintiff Fadilj worked 40.00 hours a week and was paid at an hourly rate, which was inaccurate. Because plaintiff Fadilj worked well over 40.00 hours a week, and was paid at a fixed weekly rate.

51.    Throughout his employment, plaintiff Fadilj was an exemplary employee, received raises over the years, and was never subject to any disciplinary action, bad performance reviews, or performance improvement plan.

52.    In or about March 2020, Mr. Conway told plaintiff Fadilj that "I need to let you go, you no longer can handle this job", when plaintiff Fadilj was 61 years old at that time.

53.     After Defendants terminated plaintiff Fadilj, they hired a new superintendent, who is 30ish, to replace plaintiff Fadilj's position. Fadilj tried to contact Mr. Valiotis about his termination, but he never received any responses.

### PLAINTIFF NEDZAD ORAHOVAC'S EMPLOYMENT

54.     In or about 2006, plaintiff Nedzad began working for Defendants as a Superintendent at a residential building managed by Defendants in Brooklyn, New York.

55.     In May 2019, plaintiff Nedzad was terminated by defendant, Nicholas Conway, when Nedzad was 50 years old at that time.

56.     Plaintiff Nedzad continuously worked for Defendants for about 13 years prior to his termination.

57.     Plaintiff Nedzad was interviewed and hired by defendant Efstathos Valiotis. Throughout plaintiff Nedzad's employment, Mr. Conway supervised his work.

58.     As a building superintendent, plaintiff Nedzad's job duties included collecting and taking out garbage on a daily basis, making minor apartment repairs including minor plumbing, flooring, roofing and electrical work, maintaining building boilers, checking hallways for cleanliness and maintenance issues, and cleaning inside and outside the buildings.

59.     Throughout his employment, plaintiff Nedzad was a live-in building superintendent for a residential building which consisted of 133 units, located at 475 St Marks Ave, Brooklyn, NY 11238.

60.     Throughout his employment, plaintiff Nedzad regularly worked as many as seven days and well over 40 hours each week including the requirement that he be on call 24 hours a day, seven days a week to deal with any issues that arise in their respective buildings, without receiving minimum wages and/or overtime pay as required by law.

61.    Even when plaintiff Nedzad was not actively working, he was nevertheless expected to be available to answer tenant calls and deal with any emergencies that arose 24 hours a day. From Monday to Saturday, if at any point during the day or night and plaintiff Nedzad was not in the building premises, he was required to notify Mr. Conway. If plaintiff Nedzad received tenant calls regarding apartment maintenance, he needed to return to the building premise immediately unless the tenant told him that he could perform building maintenance later. Defendants also posted plaintiff Nedzad's phone number in the building premises so that tenants could call him whenever they needed apartment maintenance.

62.    When plaintiff Nedzad was hired, Defendants hired him to work at a fixed weekly wage rate. There is no agreement or clear mutual understanding that whether the fixed weekly rate included overtime pay or not. Additionally, when plaintiff Nedzad was hired, Defendants told him that his schedule would be from 8:00 a.m. to 4:00 p.m., Monday to Friday. But plaintiff Nedzad in fact worked well over forty hours a week, and was required to be on call 24 hours a day.

63.    At the beginning of his employment, plaintiff Nedzad was paid about $500.00 per week. Later in or about 2010, plaintiff Nedzad was raised to about $600.00 per week. In or about 2014, plaintiff Nedzad was raised to about $700.00 per week. In or about 2018, plaintiff Nedzad received another raise and he was paid about $800.00 per week until the end of his employment. This amount was not sufficient to provide the required overtime premium pursuant to federal law, or the required per unit minimum weekly compensation per the New York State Minimum Wage Order for the Building Service Industry.

64.    A more precise statement of the hours and wages may be made when plaintiff Nedzad obtains the wage and time records Defendant was required to keep under the New York Labor Law.  A demand for the same has been made.

65.     Throughout his employment, plaintiff Nedzad was not provided with any wage notices.

66.     Throughout his employment, plaintiff Nedzad was provided with pay stubs. However, the paystubs did not accurately reflect his pay rates or work hours. The paystubs stated that plaintiff Nedzad worked 40.00 hours a week and was paid at an hourly rate, which was inaccurate. Because plaintiff Nedzad worked well over 40.00 hours a week, and was paid at a fixed weekly rate.

67.     Throughout his employment, plaintiff Nedzad was an exemplary employee, received raises over the years, and was never subject to any disciplinary action, bad performance reviews, or performance improvement plan.

68.     After Defendants terminated plaintiff Nedzad, they hired a new superintendent, who is 30ish, to replace plaintiff Nedzad's position.

## COLLECTIVE ACTION ALLEGATIONS

69.     Plaintiffs bring this action individually and as the class representatives on behalf of the "Proposed FLSA Collective" defined as:

> All superintendents who were employed by Defendants located in New York State who give their consent, in writing, to become party plaintiffs (hereinafter the "FLSA Class").

70.     Upon information and belief, the total number of members of the proposed collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate

financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

71.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

72.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

73.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, in as much as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

74.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

(1) Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

(2) What proof of hours worked is sufficient where the employer fails in its duty to maintain time records during Plaintiffs and the Collective Action Members' deployment;

(3) Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

(4) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, and statutory damages, interest, attorneys' fees, and costs and disbursements;

(5) Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime premiums for hours worked in excess of 40 hours per workweek.

75.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

76.    Plaintiffs and other similarly situated employees have been substantially damaged by Defendants' wrongful conduct.

## **CLASS ACTION ALLEGATIONS**

77.    In addition to bringing this action as a proposed collective action to remedy violations of the FLSA, Plaintiffs also bring this action on behalf of a Proposed Rule 23 Class, under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and consisting of:

All superintendents who were employed by Defendants located in New York State who give their consent, in writing, to become party plaintiffs (hereinafter, the "New York Class").

78.    Upon information and belief, the persons in the Proposed Class are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Proposed Class consists of all non- managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

79.    The claims of Plaintiffs are typical of the claims of the Proposed Class, and a Rule 23 class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

80.    Defendants have acted on grounds generally applicable to the Proposed Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Proposed Class as a whole.

81.    Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

82.    Plaintiffs will fairly and adequately protect the interests of the Proposed Class. Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class Members to represent their interests fairly and adequately, and that they must consider their interests just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class Members.

83.    Plaintiffs recognize that any resolution of a Rule 23 class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiffs understand

that in order to provide adequate representation, they must remain informed of litigation developments and that they may be called upon to testify in depositions and at trial.

84.     Plaintiffs have the same interests in this matter as all other members of the Proposed Class, and Plaintiffs' claims are typical of the Proposed Class.

85.     There are questions of law and fact common to the Proposed Class which predominate over any questions solely affecting the individual members of the Proposed Class, including but not limited to:

(1) Whether Defendants employed Plaintiffs and the Class members within the meaning of the NYLL;

(2) What proof of hours worked is sufficient where the employer fails in its duty to maintain time records during Plaintiffs' and the Class Members' deployment;

(3) Whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL;

(4) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, and statutory damages, interest, attorneys' fees, and costs and disbursements;

(5) Whether Defendants failed to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of 40 hours per workweek.

## STATEMENT OF CLAIM

### COUNT I: FLSA - Unpaid Overtime Wages
### *Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

86.     Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

87.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

88.     Plaintiffs consent to be parties to this action, pursuant to 29. U.S.C. §216(b).

89.     At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

90.     Plaintiffs and Class Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

91.     At all relevant times, Defendants employed Plaintiffs and Class Members within the meaning of the FLSA.

92.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

93.     Plaintiffs and Class Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

94.     Defendants failed to pay Plaintiffs and Class Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

95.     At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and Class Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(l) and 215(a).

96.     Defendants have a policy that they knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Class Members

at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiffs and Class Members. Instead, Defendants paid Plaintiffs and Class Members nothing for those overtime hours.

97.    Defendants failed to properly disclose or apprise Plaintiffs and Class Members of their rights under the FLSA.

98.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and Class Members are entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b).

99.    Due to reckless, willful and unlawful acts of Defendants, Plaintiffs and Class Members suffered damages in an amount not presently ascertainable of unpaid overtime wages, and an equal amount as liquidated damages, and prejudgment interest thereon.

100.    Plaintiffs and Class Members are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II: NYLL - Unpaid Minimum Wages
### *Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

101.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

102.    Defendants employed Plaintiffs and Class Members within the meaning of NYLL §§ 2 and 651.

103.    Pursuant to Part 141, Building Service Industry Wage Order, Defendants were required to pay Plaintiffs and Class Members a unit rate based on the number of units for which they were the resident superintendents.

104.    Defendants knowingly and willfully violated the rights of Plaintiffs and Class Members by failing to pay them minimum wages due.  For example, in 2019, Plaintiff Fadilj should have been paid a unit rate of $10.00 per unit resulting in total weekly compensation of $3,080.00, and Plaintiff Nedzad should have been paid a unit rate of $10.00 per unit resulting in total weekly compensation of $1,330.00,

105.    Due to Defendants' New York Labor Law violations, Plaintiffs and Class Members are entitled to recover from Defendants the difference between their actual wages received and the amounts that were owed under the New York Labor law. The deficiency accounts for all unpaid minimum wages, unpaid overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL §§ 663(1), 191(1), 198.

106.    Plaintiffs and Class Members are also entitled to liquidated damages pursuant to NYLL § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

### COUNT III: NYLL - Unpaid Overtime Wages
*Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

107.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

108.    Defendants knowingly and willfully violated the rights of Plaintiffs and Class Members by failing to pay them the required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

109.    Defendants' violations of the NYLL, as described, were willful and intentional.

110.    Defendants failed to properly disclose or apprise Plaintiffs and Class Members of their rights under the NYLL.

111.    Due to Defendants' New York Labor Law violations, Plaintiffs and Class Members are entitled to recover from Defendants the difference between their actual wages received and the amounts that were owed under the New York Labor law. The deficiency accounts for all unpaid minimum wages, unpaid overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL §§ 663(1), 191(1), 198.

112.    Plaintiffs and Class Members are also entitled to liquidated damages pursuant to NYLL § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

### COUNT IV: NYLL - Periodic Wage Notice and Wage Statements
#### *Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

113.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

114.    Defendants have willfully failed to supply Plaintiffs and Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as her primary language, containing their rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

115.    Through Defendants' knowing or intentional failure to provide Plaintiffs and Class Members with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the governing New York State Department of Labor Regulations.

116.    Defendants have willfully failed to supply Plaintiffs and Class Members with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

117.    Through Defendants' knowing or intentional failure to provide Plaintiffs and Class Members with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

118.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and Class Members are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

119.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, FADILJ DECEVIC, and NEDZAD ORAHOVAC, individually and on behalf of all others similarly situated, respectfully request that the Court grant the following relief:

(a) That, at the earliest possible time, Plaintiffs through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

(b) Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

(c) Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

(d) Designation of the named plaintiffs, FADILJ DECEVIC, and NEDZAD ORAHOVAC, as class representatives, and designation of the named plaintiffs' counsel of record as class counsel;

(e) Unpaid wages, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.* and the NYLL §§ 190 and 215(2)(a);

(f) An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*;

(g) Statutory damages pursuant to NYLL § 198(1)(b) and (d);

(h) Issuance of a declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL and a permanent injunction against Defendants' continued engagement in such practices; and

(i) Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
       March 24, 2022

**LAW OFFICE OF MOHAMMED GANGAT**

By:_____
       Mohammed Gangat, Esq.
       675 Third Avenue, Suite 1810
       New York, NY 10017
       (718) 669-0714
       mgangat@gangatllc.com
       *Attorneys for Plaintiffs and the Rule 23 Proposed*
       *Class and FLSA Proposed Collective*